IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VIOLET U., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case No. 4:18-cv-00080 PK <br><br> Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Violet U.'s appeal from the decision of the Social Security Administration denying her application for disability and disability insurance benefits. The Court held oral arguments on August 13, 2019. Having considered the arguments of the parties, having reviewed the record and relevant case law, and having been otherwise fully informed, the Court will reverse and remand the administrative ruling.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

1

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II. BACKGROUND

### A. PROCEDURAL HISTORY

On June 12, 2014, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on December 15, 2012.[7] The claim was denied initially and upon reconsideration.[8] Plaintiff then requested a hearing before an ALJ, which was held on October 6, 2016.[9] The ALJ issued a decision on January 18, 2017, finding that Plaintiff was not disabled.[10] The Appeals Council granted Plaintiff's request for review on June 2, 2017, and remanded the case back to the ALJ.[11] A remand hearing was held on November 2, 2017.[12] The ALJ issued an unfavorable decision on June 28, 2018.[13] The Appeals Council denied Plaintiff's

---

[4] *Richardson*, 402 U.S. at 390.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] R. at 211–12.

[8] *Id.* at 72, 84.

[9] *Id.* at 44–59.

[10] *Id.* at 88–96.

[11] *Id.* at 102–03.

[12] *Id.* at 31–41.

[13] *Id.* at 16–24.

request for review on September 26, 2018,[14] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[15]

On November 14, 2018, Plaintiff filed her complaint in this case.[16] The Commissioner filed his answer and the administrative record on February 20, 2019.[17] On February 26, 2019, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[18] Consequently, this case was assigned to Magistrate Judge Kohler pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.[19]

Plaintiff filed her Opening Brief on April 16, 2019.[20] Defendant filed his Answer Brief on May 6, 2019.[21] Plaintiff filed her Reply Brief on May 23, 2019.[22]

B.  MEDICAL HISTORY

In her application for disability, Plaintiff complained of degenerative disc disease, arthritis in her left knee, pain in her right ankle, anxiety, depression, dysthymia, avoidant personality disorder, and frequent urination due to bladder surgery.[23] Plaintiff stated that she

---

[14] *Id.* at 1–6.
[15] 20 C.F.R. § 422.210(a).
[16] Docket No. 3.
[17] Docket Nos. 8, 9.
[18] Docket No. 14.
[19] Docket No. 17.
[20] Docket No. 18.
[21] Docket No. 20.
[22] Docket No. 21.
[23] R. at 273.

was unable to perform certain tasks due to her knee and back ailments.[24] However, Plaintiff stated that she was able to fix meals, do chores around the house, run errands, and take care of a dog and cat.[25] Plaintiff further indicated that she could go for walks, read, watch television, visit with friends, and paint.[26] But her back pain interfered with some of these activities.[27]

Plaintiff's husband stated that Plaintiff "can't stand, bend over, walk, or sit very long" because of the pain in her back and knees.[28] However, he also stated that Plaintiff could perform light house cleaning, shop, do laundry, cook, and work on a computer.[29] Additionally, he indicated that Plaintiff took care of him and their pets.[30] Plaintiff's husband further stated that Plaintiff could go shopping, read, write, watch television, and do art, though she complains about her back and knees while doing so.[31]

A friend and co-worker also wrote a letter, which described Plaintiff's back pain.[32] She stated that she could see how excruciating Plaintiff's back pain was and that she noticed a reduction in her abilities.[33]

---

[24] *Id.* at 301–02.
[25] *Id.* at 302.
[26] *Id.* at 305.
[27] *Id.* at 305, 308.
[28] *Id.* at 309–10.
[29] *Id.* at 310.
[30] *Id.*
[31] *Id.* at 312–13.
[32] *Id.* at 374.
[33] *Id.*

Plaintiff had a mid-urethral sling placement in 2010.[34] Since that time, she has had stress/urge incontinence and dyspareunia.[35] She has also complained of constipation, irritable bowel syndrome, and abdominal cramps.[36] Plaintiff also has a history of bladder infections.[37]

Plaintiff has a history of left knee pain. On December 15, 2009, an MRI was conducted on Plaintiff's left knee, which was unremarkable.[38] Imaging conducted on September 24, 2014, showed degenerative arthropathic change.[39] An MRI conducted on July 22, 2015, showed a horizontal tear of the lateral meniscus.[40] Plaintiff has received injections in her knee.[41] She has also taken over-the-counter pain medication.[42]

Plaintiff also has a history of back pain. On September 24, 2014, imaging was completed on Plaintiff's spine.[43] This showed evidence of spondylosis and scoliosis.[44] Plaintiff received treatment for her back pain from January 2015 to December 2015 at Red Rock Accident and Injury Chiropractic.[45] On July 19, 2016, an x-ray found no significant change from the

---

[34] *Id.* at 398.
[35] *Id.*
[36] *Id.* at 398, 402, 404, 405.
[37] *Id.* at 400, 402, 406, 407.
[38] *Id.* at 441.
[39] *Id.* at 447.
[40] *Id.* at 476.
[41] *Id* at 472, 476.
[42] *Id.* at 472.
[43] *Id.* at 446.
[44] *Id.*
[45] *Id.* at 467–71.

September 24, 2014 x-ray.[46] Plaintiff continued to receive treatment for her knee and back pain after the relevant time period. A CT scan conducted on July 19, 2016, disclosed an annular tear at her L5-S1 disc.[47]

Plaintiff has a history of anxiety and depression for which she has received treatment and taken medication. Nichole Loser, Ph.D., diagnosed anxiety disorder and depressive disorder on September 24, 2014.[48] Dr. Loser stated that Plaintiff reported mild depression "that does not appear to significantly disrupt her life, but is exacerbated by physical pain and difficult life events, such as marital discord."[49] Plaintiff also displayed symptoms of anxiety, but they "do not appear to impact her daily routine outside of reducing her ability to tolerate additional stressors."[50]

Plaintiff was examined by Joseph Nelson, D.O., on October 6, 2014. Dr. Nelson's examination revealed normal range of motion of the thoracic and lumbar spine.[51] He further found normal range of motion in both knees in all planes.[52] Based upon his examination, Dr. Nelson opined that neither Plaintiff's back nor her knee limited her ability to work.[53]

---

[46] *Id.* at 482.
[47] *Id.* at 545.
[48] *Id.* at 448–52.
[49] *Id.* at 452.
[50] *Id.*
[51] *Id.* at 458.
[52] *Id.* at 459.
[53] *Id.* at 459–60.

On October 9, 2014, Phillip Cali, Ph.D., a state agency psychologist, reviewed Plaintiff's medical records and opined that her mental health impairments were non-severe.[54] Matthew Park, Ph.D., another state agency psychologist, affirmed the decision of Dr. Cali.[55]

On October 17, 2014, Lewis J. Barton, M.D., a state agency physician, reviewed Plaintiff's medical records and opined that her physical impairments were non-severe.[56] Dennis Taggart, M.D., another state agency physician, later agreed with this conclusion.[57]

On February 3, 2015, Plaintiff's treating physician, Rox Burkett, M.D., completed a Statement of Physical Limitations form.[58] Dr. Burkett opined that Plaintiff could only do less than sedentary work because of her conditions.[59] After the relevant time period, Dr. Burkett wrote a letter again opining that Plaintiff was disabled.[60]

On October 6, 2016, Plaintiff submitted a letter from her therapist, Timothy Adams, LCSW.[61] Mr. Adams noted that he had been seeing Plaintiff since November 2012 and her level of symptomology has remained the same.[62] Mr. Adams stated that Plaintiff's depression and

---

[54] *Id.* at 69.
[55] *Id.* at 81.
[56] *Id.* at 68.
[57] *Id.* at 79–80.
[58] *Id.* at 462–63.
[59] *Id.* at 462.
[60] *Id.* at 484–86.
[61] *Id.* at 488.
[62] *Id.*

anxiety issues affect her ability to perform and function at work.[63] A similar letter was provided on September 21, 2017.[64]

C.  HEARING TESTIMONY

An initial hearing was held on October 6, 2016. Plaintiff testified that she generally gets about five hours of sleep and that her sleep is disrupted by her knee pain.[65] Plaintiff stated that she worked as a housekeeper.[66] Plaintiff stated that her knee and back pain made it difficult to do her work because she is required to bend down and stoop over.[67] By the end of her shift, Plaintiff stated that she is "just in pain and exhausted and tired."[68] Plaintiff had received treatment and had been taking Ibuprofen, but nothing seemed to help with her pain.[69]

Plaintiff further testified that she had crying spells, depression, and anxiety.[70] Plaintiff stated that she was taking medication for her mental health issues.[71]

At the second hearing, Plaintiff testified that she had stopped working because she "just couldn't do it."[72] She stated that she was in pain a lot of the time and was restricted from bending, lifting, twisting, lifting more than 10 or 20 pounds, and going upstairs.[73] Plaintiff

---

[63] *Id.*
[64] *Id.* at 572.
[65] *Id.* at 48.
[66] *Id.*
[67] *Id.*
[68] *Id.* at 49.
[69] *Id.* at 55–56.
[70] *Id.* at 53.
[71] *Id.* at 55.
[72] *Id.* at 34.
[73] *Id.* at 35.

8

expressed that her pain was worsening and making it difficult for her to walk.[74] Plaintiff stated that her doctor informed her she needed surgery, but she could not afford it.[75]

Plaintiff further testified that she believed her depression and anxiety had been getting worse, in part because of her increased pain.[76] Plaintiff further described how her pain made doing chores and walking her dogs difficult.[77]

D.    THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 15, 2012.[78] At step two, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments and, therefore, she was not disabled.[79]

III.  DISCUSSION

Plaintiff raises the following issues in her brief: (1) whether the ALJ erred in finding at step two that Plaintiff had no severe impairments; and (2) whether the ALJ erred in his evaluation of the medical opinion evidence.

A.    STEP TWO

At step two of the sequential evaluation, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. An impairment is "severe" if it

---

[74] *Id.* at 36.
[75] *Id.* at 36–37.
[76] *Id.* at 38.
[77] *Id.* at 38–39.
[78] *Id.* at 19.
[79] *Id.*

9

"significantly limits [a claimant's] physical or mental ability to do basic work activities."[80] A claimant must make only a de minimis showing for her claim to advance beyond step two of the analysis.[81] However, "a showing of the mere presence of a condition is not sufficient."[82] Thus, "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities . . . the impairments do not prevent the claimant from engaging in substantial gainful activity."[83] "If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [s]he is not eligible for disability benefits."[84]

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.
>
> . . . .
>
> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.[85]

Here, the ALJ determined that Plaintiff had a number of medically determinable impairments, but that none of them were severe. The ALJ stated that "[t]he longitudinal medical

---

[80] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[81] *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).

[82] *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008).

[83] *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[84] *Id.*

[85] SSR 85-28, 1985 WL 56856, at *3–4 (Jan. 1, 1985).

evidence does not establish a level of severity of the claimant's impairments to prohibit substantial gainful activity."[86] However, as set forth above, a denial at step two is only appropriate if it is clearly established by medical evidence. If it is not, the adjudication must continue. Where "the medical evidence is equivocal, it was error to decide this case at step two of the evaluation process."[87]

Because the ALJ did not find that the medical evidence clearly established that Plaintiff's impairments did not have more than a minimal effect on her ability to perform basic work activities, the Court cannot conclude that the ALJ applied the correct legal standard.[88] Moreover, the ALJ does not appear to have considered all of the medical evidence in the record, including the July 2015 MRI of Plaintiff's knee and misstated the evidence related to Plaintiff's use of pain medication. The Commissioner concedes that the failure to consider the MRI was error and, despite the Commissioner's urging, the Court cannot conclude that the error was harmless. Therefore, remand is required so that the ALJ may consider all of the evidence in the record using the proper legal standard.

Plaintiff further argues that the ALJ failed to consider her obesity as required by SSR 02-1p. The ALJ's initial decision specifically found that Plaintiff's weight "did not significantly affect her gait or exacerbate her knee and back pain symptoms."[89] There is no similar conclusion

---

[86] R. at 20.

[87] *Gosch v. Astrue*, No. 09-1349-JWL, 2011 WL 1899289, at *6 (D. Kan. May 19, 2011).

[88] *Sanchez v. Berryhill*, No. CV 17-543 CG, 2018 WL 1870434, at *5 (D. N.M. Apr. 17, 2018) (concluding that ALJ applied incorrect legal standard where ALJ "did not state that the evidence clearly establishes that Mr. Sanchez's impairments do not have more than a minimal effect on his ability to perform basic work activities").

[89] R. at 93.

in the decision under review. Because remand is required, the ALJ may consider what effect, if any, Plaintiff's weight has on her ability to do basic work activities in accordance with SSR 02-1p.

B.      MEDICAL OPINION EVIDENCE

Plaintiff next argues that the ALJ erred in his treatment of the opinions of her treating physician, Dr. Burkett and her therapist, Mr. Adams. An ALJ must review every medical opinion.[90] In reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[91] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[92] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in the record.[93] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[94]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[95] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist

---

[90] 20 C.F.R. § 404.1527(c).

[91] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *Id.*

12

in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[96]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[97] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[98]

Because remand is required, the Court need not decide whether the ALJ's treatment of the opinion evidence was correct.[99] The ALJ is free to reevaluate the opinions on remand under the relevant standards. However, the Court finds it necessary to address the ALJ's consideration of the opinions of Mr. Adams.

The ALJ gave no weight to Mr. Adams' statements "because they are for periods after the date last insured."[100] The ALJ was correct that Mr. Adams' letters were authored after the date last insured. And, "[u]nder title II, a period of disability cannot begin after a worker's disability insured status has expired."[101] However, the letters being authored after Plaintiff's insured status expired does not necessarily mean they should not be considered. This is especially true given the evidence relates to Plaintiff's condition during the relevant period.[102]

---

[96] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[97] *Id.*

[98] *Id.*

[99] *Id.* at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

[100] R. at 23.

[101] SSR 83-10, 1983 WL 31251, at *8 (Jan. 1, 1983).

[102] *See Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (examining medical evidence created after the date last insured that related to the nature and severity of claimant's condition during the relevant time period).

As set forth above, Mr. Davis stated that he had seen Plaintiff since 2012, that her depression and anxiety issues affect her ability to perform and function at work, and that her symptomology had not changed. While Mr. Adams' letters were authored after the relevant time period, his statements relate directly to Plaintiff's impairments during the relevant period and should have been considered by the ALJ.[103]

Defendant offers various arguments to support the ALJ's rejection of Mr. Adams' opinions. However, the ALJ did not offer these rationales in his decision. Thus, upon remand, the ALJ should consider Mr. Adams' opinions using the proper standard.

IV. CONCLUSION

It is therefore

ORDERED that the ALJ's decision is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the purposes of conducting additional proceedings as set forth herein.

DATED this 19th day of August, 2019.

BY THE COURT:

Paul Kohler
United States Magistrate Judge

---

[103] *See Miocic v. Astrue*, 890 F. Supp. 2d 1046, 1055–56 (N.D. Ill. 2012) (concluding that ALJ erred in rejecting opinion evidence solely because it was produced after date last insured); *see also Case v. Astrue*, No. 09-2058-KHV-GBC, 2009 WL 5210844, at *3 (D. Kan. Dec. 23, 2009) (same).